IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 24-079 |
| KHALED DALLO | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by its attorneys, David Metcalf, United States Attorney for the Eastern District of Pennsylvania, and Jason D. Grenell, Assistant United States Attorney, respectfully submits this sentencing memorandum for defendant Khaled Dallo (hereinafter "Dallo"), following his guilty plea to one count of conspiracy to commit federal program bribery, in violation of 18 U.S.C. § 371. The government's recommendation as to sentence can be found in its sealed supplement.

**I.     INTRODUCTION**

On March 1, 2024, the United States filed a one-count Information charging the defendant, Khaled Dallo, with conspiracy to commit federal program bribery, in violation of 18 U.S.C. § 371. The Information also contained a Notice of Forfeiture seeking forfeiture of any property or proceeds from the instant offense. On April 12, 2024, the defendant, Dallo, appeared before the Honorable Wendy Beetlestone, waived prosecution by Indictment, and pled guilty to Count One of the Information.

**II.     LEGAL STANDARD**

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.

> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.
>
> (3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir. 2006).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted).

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

### III. SENTENCING CALCULATION

#### A. Statutory Maximum Sentence.

The maximum penalty for conspiracy, in violation of 18 U.S.C. § 371, is five years' imprisonment, a $250,000 fine, a three-year term of supervised release, and a $100 special assessment.

#### B. Sentencing Guidelines Calculation.

The government agrees with the Probation Office's calculation of the sentencing guidelines as to defendant Dallo. The defendant's criminal history score is zero. According to the sentencing table in USSG Chapter 5, Part A, zero criminal history points establishes a criminal history category of I. PSR ¶ 54.

The base offense level for Count One is 12. PSR ¶ 40. Two points are added since the offense involved more than one bribe. PSR ¶ 41. The loss figure in this case is $2,062,374, which is more than $1,500,000 but less than $3,500,000, which results in 16 points being added. PSR ¶ 42. Two points are subtracted for being a zero-point offender. PSR ¶ 49. There is a collective three-level downward adjustment for acceptance of responsibility. PSR ¶ 47-8. With a criminal history category of I and an offense level of 25, the advisory guideline range is 57 to 71 months' imprisonment, however, the statutory maximum is 60 months, making the adjusted range 57 to 60 months' imprisonment. PSR ¶ 91.

### IV. ANALYSIS

The Supreme Court has declared, "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 133 S. Ct. at 2084. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

1. **The nature and circumstances of the offense and the history and characteristics of the defendant.**

The defendant and his co-conspirators paid a staggering number of bribes to an Amtrak employee in an effort to obtain millions of dollars through bogus invoices. Those millions were paid to the defendant and the company for which he worked. At the time of this crime, Dallo was working directly with Amtrak Employee #1 and was one of the people bribing Amtrak Employee #1 by hosting him at dinners, providing him gifts, and giving him gift cards. In December 2015, the Contractor was awarded a roughly $58,000,000 project to renovate 30th Street Station, a beloved and historic station in our city. The project was a major project for both Amtrak and the Contractor.

Soon after work began at 30th Street Station, Amtrak Employee #1 approached officials at the company, including Dallo, and made requests for things of value in exchange for help and cooperation. It soon became clear to Dallo, Lee Maniatis and Donald Seefeldt,

that to get things done, and done fast, they were going to have to bribe Amtrak Employee #1. And that's exactly what they conspired to do. In total, Dallo and his co-conspirators provided Amtrak Employee #1 with approximately $323,686 in gifts, trips, dinners, and other things of value. The bribes started out relatively small but escalated quickly. From May 2016 through roughly October 2016, Dallo and Maniatis paid for roughly $7,800 in dinners and entertainment. From October 2016 through December 2016, Seefeldt joined Dallo and Maniatis in paying for roughly $2,500 in meals, entertainment, gift cards, limousine rentals and alcohol.

Dallo's personal life does admittedly offer contrast to the criminal activity in this case. He appears to have led a law-abiding life before and after the conduct charged here. This conduct also appears to stand in stark contrast to how he has otherwise comported himself. It also appears to have affected him deeply both emotionally and physically. The defendant also appears to have health issues. It is also clear that he is ashamed of his conduct as he has not informed much of his family about the crime he committed.

**2.    The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

The defendant committed a very serious offense. The sentence needs to be commensurate with the defendant's actions. This case did not involve a temporary lapse in judgment. This was a years-long offense in which each of the defendants, including Dallo, had an opportunity to abandon the conspiracy. Dallo did take a step in the right direction, however, when the agents first approached him. He began down the road to acceptance of responsibility when he began to tell the agents in November of 2019 about his involvement in this conspiracy.

**3.    The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.**

The sentence the Court imposes should provide both specific and general deterrence to criminal conduct. The defendant's actions in this case warrant an appropriate sentence to prevent him, and others, from committing further crimes. Specific deterrence does not seem to be the greatest consideration in the defendant's case. His otherwise crime-free life seems to indicate that he won't be conspiring to bribe anyone else.

This sentence, though, should be crafted with general deterrence in mind. Economic crimes like this are highly calculated by their participants. More than many other types of criminals, well-educated and savvy individuals like the defendant who are contemplating committing an economic crime conduct a careful cost-benefit analysis of punishment versus reward.

However, given the procedural posture of this case, and the defendant's role, the sentence should be individualized as to Dallo in the steps he chose, for example by ultimately confessing, as opposed to his codefendants.

**4.  The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

There is no need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." § 3553(a)(2)(D).

**5.  The guidelines and policy statements issued by the Sentencing Commission and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

A sentence in this case in line with the government's recommendation in its sealed attachment would not be an unwarranted sentencing disparity given the defendant's role and the procedural history of this case.

**V.   CONCLUSION**

The government's recommendation regarding sentencing appears in the sealed attachment.

        Respectfully submitted,

        DAVID METCALF
        United States Attorney


        */s Jason D. Grenell*
        JASON D. GRENELL
        Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Quigg, Charlie, Esq.
cquigg@wnj.com

Michael J. Engle, Esq.
mengle@stradley.com

                                                 */s Jason D. Grenell*
                                                 JASON D. GRENELL
                                                 Assistant United States Attorney

DATED:  November 12, 2025.